IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ILLINOIS FUEL & RETAIL ASSOCIATION, et al., | |
| Plaintiffs, | No. 3:22-cv-03089-SEM-KLM |
| v. | Judge Sue E. Myerscough |
| ILLINOIS DEPARTMENT OF REVENUE, et al., | Magistrate Judge Karen L. McNaught |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

STATEMENT OF FACTS ............................................................................................................... 3

STANDARD OF REVIEW ............................................................................................................... 3

ARGUMENT .................................................................................................................................... 4

I.       Plaintiffs' Free Speech Claims Fail. ...................................................................................... 4

        A.       The signage requirement does not compel partisan "political speech," but a purely factual commercial disclosure .................................................................................... 4

        B.       Under *Zauderer*, the signage requirement complies with the First Amendment.... 5

               1.       The signage requirement is reasonably related to a substantial governmental interest. .................................................................................. 5

               2.       The signage requirement is purely factual and uncontroversial. ................ 6

        C.       Heightened intermediate and strict scrutiny tests do not apply here to the signage requirement. .................................................................................................................. 7

        D.       The signage requirement complies with the Illinois Constitution as the Illinois Constitution does not provide greater protection than the federal Constitution. …9

II.      Plaintiffs' Equal Protection Claim Fails. ........................................................................... 10

CONCLUSION ............................................................................................................................... 12

Defendants the Illinois Department of Revenue; David Harris, in his official capacity as Director of the Illinois Department of Revenue; and Dan Wright, in his official capacity as Sangamon County State's Attorney, by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, respectfully request that this Honorable Court dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiffs Illinois Fuel & Retail Association, Saunders Oil Co., Inc., and Freedom Oil Company, on their own behalf and on behalf of a putative class of similarly situated gas retailers, filed their complaint on May 19, 2022, naming the Illinois Department of Revenue (hereinafter "IDOR"); David Harris, in his official capacity as the Director of IDOR; and Dan Wright, in his role as Sangamon County State's Attorney. *See* Doc. 1-1 ("Compl."). Plaintiffs' complaint concerns the enforcement of a "recently amended state statute, namely 35 ILCS 505/2." Compl. ¶ 2. Specifically, Plaintiffs' Complaint identifies Senate Bill ("SB") 157 and its addition of subsection (a-5), which provides:

> Beginning on July 1, 2022 and through December 31, 2022, each retailer of motor fuel shall cause the following notice to be posted in a prominently visible place on each retail dispensing device that is used to dispense motor fuel in the State of Illinois: "As of July 1, 2022, the State of Illinois has suspended the inflation adjustment to the motor fuel tax through December 31, 2022. The price on this pump should reflect the suspension of the tax increase." The notice shall be printed in bold print on a sign that is no smaller than 4 inches by 8 inches. The sign shall be clearly visible to customers. Any retailer who fails to post or maintain a required sign through December 31, 2022 is guilty of a petty offense for which the fine shall be $500 per day per each retail premises where a violation occurs. 35 ILCS 505/2(a-5).

1

*Id.* ¶ 14. Plaintiffs' Complaint continues by arguing that this "specific amendment to the Motor Fuel Tax Law requires Plaintiffs and other retailers to choose between making a political statement they do not wish to make to their customers or the general public on behalf of the State of Illinois, or fac[e] criminal penalties." *Id.* ¶ 16. Plaintiffs assert that this amendment violates their "Free Speech rights as protected by Article I, Section 4 of the Illinois Constitution and the First Amendment to the United States Constitution by compelling political speech." *Id.* ¶ 17. Further, Plaintiffs assert a violation of their "Equal Protection rights guaranteed by the United States and State of Illinois Constitutions" and state that an amendment to the Use Tax Act, 35 ILCS 105/3a, compels speech of retailers similar to the compelled speech imposed on retailers subject to the Motor Fuel Tax Law, but does not include the criminal penalties imposed under the Motor Fuel Tax Law amendment. *Id.* ¶¶ 26, 28. "As a result, SB 157 treats retailers subject to the Motor Fuel Tax Law differently than retailers subject to the Use Tax Act, and there is no rational basis for this distinction" and "is a clear violation of Plaintiffs' Equal Protection rights." *Id.* ¶ 27.

Plaintiffs' Complaint seeks declaratory relief and asks this Court to declare that 35 ILCS 505/2(a-5) violates Article 1, § 4, of the Illinois Constitution and the First and Fourteenth Amendments to the United States Constitution. *Id.* ¶ 40(i). Plaintiffs also ask this Court to "enter an injunction permanently enjoining Defendants from enforcing SB 157 in a way that violates the rights of Plaintiffs." *Id.* ¶ 40(iii).

Defendants move to dismiss Plaintiffs' Complaint in its entirety for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have insufficiently pled that 35 ILCS 505/2(a-5) violates either their free speech rights or the Equal Protection Clause.

**STATEMENT OF FACTS**

The Motor Fuel Tax Law, 35 ILCS 505/1, *et seq.* (LexisNexis 2022), imposes a tax on the privilege of operating motor vehicles upon the public highways and recreational-type watercrafts upon the waters of the State. Illinois SB 157 recently amended section 2 of the Motor Fuel Tax Law as detailed above. Compl. ¶ 13. The amendment requires retailers of motor fuel to place on motor fuel pumps a 4 inch by 8 inch sign in bold, which states: "As of July 1, 2022, the State of Illinois has suspended the inflation adjustment to the motor fuel tax through December 31, 2022. The price on this pump should reflect the suspension of the tax increase." *Id.* ¶ 14. Any retailer who fails to post or maintain this sign through December 31, 2022, is guilty of a petty offense for which the fine shall be $500 per day per each retail premise where a violation occurs. *Id.* In addition, SB 157 amends the Use Tax Act, 35 ILCS 105/3a (LexisNexis 2022), to include:

> In addition, retailers who sell items that would have been taxed at the 1% rate but for the 0% rate imposed under this amendatory Act of the 102nd General Assembly shall, to the extent feasible, include the following statement on any cash register tape, receipt, invoice, or sales ticket issued to customers: "From July 1, 2022 through July 1, 2023, the State of Illinois sales tax on groceries is 0%." If it is not feasible for the retailer to include the statement on any cash register tape, receipt, invoice, or sales ticket issued to customers, then the retailer shall post the statement on a sign that is clearly visible to customers. The sign shall be no smaller than 4 inches by 8 inches.

*Id.* ¶ 25. On May 19, 2022, Plaintiffs filed this action seeking to permanently enjoin IDOR's enforcement of the signage requirement set out in 35 ILCS 505/2(a-5), contending that it violates their free speech rights and the Equal Protection Clause. *Id.* ¶ 3.

**STANDARD OF REVIEW**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain sufficient facts that when

assumed true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Offering nothing more than "labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft*, 556 U.S. at 678.

## ARGUMENT

I. **Plaintiffs' Free Speech Claims Fail.**

   A. **The signage requirement does not compel partisan "political speech," but a purely factual commercial disclosure.**

Free-flowing political debate is "integral to" our system of government, "'there is practically universal agreement that a major purpose of th[e] [First] Amendment was to protect the free discussion of governmental affairs.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). The right to speak freely about political issues, public policy, and candidates for public office has both individual and associational aspects. *Buckley*, 424 U.S. at 15. Here, Plaintiffs have incorrectly categorized the required disclosure on motor fuel pumps contained within 35 ILCS 505/2(a-5) as partisan "political speech." *See* Compl. ¶ 17. Instead, the required disclosure is properly categorized as a "truthful disclosure of commercial speech," which contains "'purely factual and uncontroversial information'" that relates to the product, motor fuel, provided (suspension of the inflation adjustment to the motor fuel tax). *Nat'l Inst. Of Family & Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361, 2372 (quoting *Zauderer v. Office of Disciplinary Counsel of Supreme* Court, 471 U.S. 626, 651 (1985)). Therefore, this matter's at-issue compelled commercial disclosure required on Illinois motor fuel pumps must be analyzed under the *Zauderer* test.

### B. Under *Zauderer*, the signage requirement complies with the First Amendment.

Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, Plaintiffs' constitutionally protected interest in not providing any particular factual information is minimal. *See Zauderer*, 471 U.S. at 629. Under *Zauderer*, the government may compel the truthful disclosure of commercial speech as long as the compelled disclosure is: (1) "'reasonably related'" to a substantial governmental interest; and (2) involves "'purely factual and uncontroversial information'" that relates to the service or product provided. *NIFLA*, 138 S. Ct. at 2372, 2387 (quoting *Zauderer*, 471 U.S. at 651). The signage requirement meets both elements of the above-mentioned *Zauderer* test concerning the compelled disclosure of commercial speech.

1. The signage requirement is reasonably related to a substantial governmental interest.

The *Zauderer* Court recognized "that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech." 471 U.S. at 651. But it held that the speaker's rights "are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Id.* In addition, the Court noted that "because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, '[warnings] or [disclaimers] might be appropriately required in order to dissipate the possibility of consumer confusion.'" *Id.* (quoting *In re R. M. J.*, 455 U.S. 191, 201 (1982)). The signage requirement easily passes muster under this standard.

The signage requirement is "reasonably related to a substantial governmental interest," *CTIA—The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 845 (9th Cir. 2019)—namely, ensuring that consumers actually are aware of and obtain the benefit of the General Assembly's

suspension of the inflation adjustment to the gas tax. The text of the requirement makes that clear. It requires retailers to display the following text: "As of July 1, 2022, the State of Illinois has suspended the inflation adjustment to the motor fuel tax through December 31, 2022. The price on this pump should reflect the suspension of the tax increase." Compl. ¶ 14. As its text reflects, the General Assembly wanted to ensure that Illinois residents obtained the full benefit of the suspension of the inflation adjustment to the gas tax. That interest is a "substantial" one, and the signage requirement is "reasonably related" to it, in multiple respects. Most obviously, the requirement ensures that consumers know that gas taxes are lower than they might otherwise be, thus inducing them to purchase more gas. It also serves the related purpose of increasing the pressure on retailers to actually pass on the tax relief to consumers, rather than increasing prices on July 1 to reflect a tax increase that did not occur. Thus, as in *Zauderer*, the signage requirement is reasonably related to a substantial governmental interest. *See* 751 U.S. at 652.

        2.      <u>The signage requirement is purely factual and uncontroversial.</u>

The signage requirement is also "purely factual and uncontroversial." *Zauderer*, 471 U.S. at 651. First, Plaintiffs fail entirely to plead that the disclosure is untrue or misleading. That is because the text of signage requirement is uncontestably literally true and purely factual. *See* Compl. ¶ 14. The requirement directs gas retailers to inform consumers of a fact: that the General Assembly has "suspended the inflation adjustment to the motor fuel tax through December 31." *Id.* It further explains to consumers a second fact: that the price charged for gas "should reflect the suspension of the tax increase." *Id.* There is no dispute that these are statements of fact, rather than opinion: The signage requirement does not require retailers to state, for instance, that they *approve* of the General Assembly's decision to suspend the inflation adjustment; it just requires them to state that it occurred and is reflected in the price of gas.

6

Further, the text of the compelled disclosure is uncontroversial. Compl. ¶ 14. Plaintiffs' Complaint attempts to argue otherwise by pointing to a statement made by a single state legislator and an ad run by Governor Pritzker. *Id.* ¶¶ 21-22. But the Ninth Circuit rejected a similar approach in *CTIA*, explaining that a regulated entity cannot take a purely uncontested factual statement and "tie[] in some way to a controversial issue" and argue for that reason alone that the compelled disclosure is "controversial." 928 F. 3d at 845. Plaintiffs' attempt to establish the at-issue compelled disclosure as "controversial" in paragraphs 21 and 22 accordingly fails. *See Id.* In addition, the signage requirement makes no mention of JB Pritzker's reelection campaign, a clearly controversial/partisan issue nor does it mention the Illinois General Assembly (if that entity as a whole is deemed controversial). Compl.¶¶ 21-22; *but see Id.* at ¶ 14. In sum, Plaintiffs have merely pled and attempted to take a purely factual statement and tie it to a political campaign and argue, for that reason alone, makes the compelled disclosure "controversial." Compl. ¶ 20. This Court should reject this reasoning, look to the text of the compelled disclosure, find that the signage requirement is purely factual, and uncontroversial, and conclude that the at-issue commercial disclosure complies with the First Amendment and does not violate Plaintiffs' free speech rights.

    **C.**    **Heightened intermediate and strict scrutiny tests do not apply here to the signage requirement.**

The United States Supreme Court in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n* held that the government may regulate commercial speech that is neither misleading nor connected to unlawful activity, as long as the governmental interest in regulating the speech is substantial. 447 U.S. 557, 564 (1980). Here, *Zauderer*, not *Central Hudson*'s intermediate scrutiny test, applies. Alternatively, even if this Court deems *Central Hudson* does apply, the signage requirement satisfies *Central Hudson*, in that it "directly advances" the State's "substantial"

7

interest in ensuring consumers receive the benefit of the suspension of the inflation adjustment and is not "more extensive" than necessary to serve that interest. *Id.*

Further, the Supreme Court has held that compelled speech which "penalizes the expression of particular points of view and forces speakers to alter their speech to conform with an agenda that they do not set" is subject to strict scrutiny. *Pac. Gas & Elec. Co. v. Pub. Util. Comm'n of Calif.*, 475 U.S. 1, 9 (1985); *see also Riley v. National Federation of Blind, Inc.*, 487 U.S. 781, 795 (1988). Plaintiffs rely specifically on *Wooley v. Maynard*, 430 U.S. 705 (1977), *see* Compl. ¶ 19, which concerned a state law requiring all "noncommercial vehicles" to display the words "Live Free or Die" on their license plates, 430 U.S. at 707. But *Wooley* did not involve commercial speech. Indeed, the Supreme Court made just that distinction in *Zauderer*, distinguishing *Wooley* and similar cases on the ground that "the interests at stake" when the government requires commercial entities to disclose facts to consumers "are not of the same order as those discussed in Wooley." *Zauderer*, 471 U.S. at 651. The same is true here: Requiring gas retailers to inform consumers of a change in the gas tax does not implicate the weighty concerns discussed in *Wooley*, and so strict scrutiny does not apply.

The same is true of cases concerning the sale and advertising of videogames to minors. In *Brown v. Entm't Merchants Ass'n*, for instance, the Supreme Court reviewed a California law that prohibited the sale of "violent" video games to minors and required labels bearing the number "18" to be placed on certain video games sold to minors. 564 U.S. 786, 789 (2011). The Court applied strict scrutiny to the law, having determined that the requirements imposed by the state constituted a "restriction on the content of protected speech." *Id.* at 799. Further, the Seventh Circuit in *Entm't Software Ass'n v. Blagojevich* employed strict scrutiny to review an Illinois law restricting the

8

sales of certain video games to minors and requiring a label deeming a game "sexually explicit." 469 F. 3d 641, 645-46 (7th Cir. 2006).

Both *Entertainment Merchants* and *Blagojevich* are distinguishable from the present matter because those matters involved warning requirements and affirmative limitations on speech in the form of sales restrictions. *See Brown*, 564 U.S. at 789; *Entm't Software Ass'n*, 469 F. 3d at 645-46. Furthermore, those cases involved a state attempting to restrict core speech in the form of "art and literature" based on the state's determination that certain words were "too harmful to be tolerated" and so were not protected under the First Amendment. *Brown*, 564 U.S. at 791. Here, the signage requirement does not impose any restriction on Plaintiffs' dissemination of speech, nor does it touch upon Plaintiffs' core speech. *See* Compl. ¶ 14. Instead, the requirement simply informs the public regarding the suspension of the inflation adjustment to the motor fuel tax. *See Id.* Therefore, no heightened level of scrutiny has been triggered and the aforementioned *Zauderer* test is the only applicable test to apply here.

      **D.**      **The signage requirement complies with the Illinois Constitution as the Illinois Constitution does not provide greater protection than the federal Constitution.**

The Illinois Supreme Court has held that "the Illinois Constitution may provide greater protection to free speech than does its federal counterpart" in certain instances. *City of Chicago v. Pooh Bah Enters.*, 224 Ill. 2d 390, 446-47 (Ill. 2006). Here, an uncontestably true, factual, and uncontroversial commercial disclosure requirement provides no basis for this Court to conclude that article 1, section 4, of the Illinois Constitution affords greater protection to Plaintiffs in this context than is provided by the federal constitution. *See City of Chicago*, 224 Ill. 2d at 448. Further, Plaintiffs do not identify in their Complaint any Illinois case law providing them such greater protection.

9

## II. Plaintiffs' Equal Protection Claim Fails.

The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits states from "den[ying] any person within its jurisdiction the equal protection of the laws." *See* U.S. Const. amend. XIV. In other words, the Clause "essentially is a direction that all persons similarly situated should be treated alike." *Vision Church v. Vill. Of Long Grove*, 468 F. 3d 975, 1000 (7th Cir. 2006) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Equal protection analysis is divided into three categories: (1) strict scrutiny, which requires that the classification be narrowly tailored to a compelling state interest; (2) intermediate scrutiny, which requires that the classification be substantially related to an important state interest; and (3) rational review, which requires that the classification be rationally related to a legitimate state interest. *Ill. Bell Tel. Co. v. Vill. Of Itasca*, 503 F. Supp. 2d 928, 951 (N.D. Ill. 2007) (citing *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 440-41 (1985)). The first category applies to protected classes – race, alienage, or national origin – or impingement on personal rights guaranteed by the Constitution. *Ill. Bell Tel. Co.*, 503 F. Supp. 2d at 951 (citing *City of Cleburne, Tex.*, 473 U.S. at 440). The second category applies to "quasi-suspect" classes, such as gender. *Ill. Bell Tel. Co.*, 503 F. Supp. 2d at 951 (citing *City of Cleburne, Tex.*, 473 U.S. at 441). Finally, the third category applies to all other classifications and under rational review legislation is presumed to be valid. *Ill. Bell Tel. Co.*, 503 F. Supp. 2d at 951 (citing *City of Cleburne, Tex.*, 473 U.S. at 440). Clearly, rational review applies here to Plaintiffs' Equal Protection Clause claim as they have not alleged they are members of a protected or quasi-suspect class.

Under the rational basis test, a statute will be upheld "'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *City of Chi. (Alvarez) v. Shalala*, 189 F. 3d 598, 605 (7th Cir. 1999) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Under this highly deferential standard, the court must be "extremely respectful of

legislative determinations." *United States v. Jester*, 139 F. 3d 1168, 1171 (7th Cir. 1998). In *Wroblewski v. City of Washburn*, the Seventh Circuit provided a specific standard in regard to the rational relationship standard and stated that "[t]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." 965 F. 2d 452, 460 (7th Cir. 1992). In that case, the Seventh Circuit upheld the 12(b)(6) dismissal of a complaint where the complaint's allegations supported that there was a rational basis for the defendant city's actions. *Id.* Indeed, under rational basis review, "a classification is generally valid as long as a rational basis is plausible, even if the legislature did not expressly endorse it." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019). That standard "imputes 'a strong presumption of validity' on the contested classification"; to overcome it, "a challenger must negate 'every conceivable basis which might support' the classification." *Id.*

Plaintiffs have failed to "negate every conceivable basis" that might support the General Assembly's distinction between retailers subject to the Use Tax Act and motor fuel retailers subject to the Motor Fuel Tax Law. *See Id.* There are many "conceivable" reasons the General Assembly might have imposed a penalty on gas retailers that failed to post signs informing consumers of tax relief but not imposed a similar penalty on other retailers. For instance, the legislature might have wanted to provide a greater incentive to gas retailers to post signs because the increase in gas prices has been more substantial than the increase in the price for other consumer goods, and thus the tax relief more important to consumers. Alternatively, the legislature might have thought it was more likely that gas retailers would not pass on reduction in the gas tax to consumers, and so thought the signs more important in that context. Finally, the legislature might have believed that it was easier for gas retailers to post the signs, given the highly regulated nature of their business, and so

thought that their hypothetical failure to do so would be more problematic and thus more deserving of penalties.

In the end, SB 157's amendments do not need to be perfectly designed to achieve its goals, as rational basis review "is not a license for courts to judge the wisdom, fairness, or logic" of government agencies' choices. *Heller*, 509 U.S. at 319. Indeed, as the Seventh Circuit stated in *Ostrowski v. Laky Cty.*, "[a]s long as a policy has some rational connection to a legitimate state interest, improving it is a task for the democratic branches of government, rather than the courts." 2022 U.S. App. LEXIS 12673, at *15 (7th Cir. May 11, 2022). Therefore, this Court, like the Seventh Circuit in *Ostrowski*, should also conclude SB 157's amendment to the Motor Fuel Tax Law meets rational basis review. *See Id.*

## CONCLUSION

**WHEREFORE**, Defendants, Illinois Department of Revenue, Director of the Illinois Department of Revenue David Harris, and Sangamon County State's Attorney Dan Wright respectfully request this Honorable Court grant their Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6), with prejudice.

                              Respectfully submitted,

                              ILLINOIS DEPARTMENT OF REVENUE,
                              and Director DAVID HARRIS,
                              and DAN WRIGHT, in their official capacities,

                                  Defendants,

                              KWAME RAOUL, Illinois Attorney General,
                                  Attorney for Defendants,

David T. Tichy
Assistant Attorney General
500 South Second Street
Springfield, IL  62701
Phone: (217) 782-1841                    BY:    s/ David Tichy
Fax: (217) 782-8767                              David T. Tichy
Email: David.Tichy@ilag.gov                 Assistant Attorney General

Alex Hemmer
Deputy Solicitor General
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, Illinois 60601
Phone: (312) 814-5526
Email: alex.hemmer@ilag.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| ILLINOIS FUEL & RETAIL ASSOCIATION, SAUNDERS OIL CO., INC., et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) )   Case No. 22-3089-SEM-KLM |
| ILLINOIS DEPARTMENT OF REVENUE, et al., | ) ) ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2022, the foregoing document, DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Donald M. Craven
**Donald M. Craven, P.C.**
1005 North Seventh Street
Springfield, IL 62702
don@cravenlawoffice.com
joe@cravenlawoffice.com
maralee@cravenlawoffice.com

By:   s/ David Tichy
       David T. Tichy
       Assistant Attorney General

David T. Tichy, ARDC #6321624
Assistant Attorney General
500 South Second Street
Springfield, IL  62701
Phone: (217) 782-1841
Fax: (217) 782-8767
Email: David.Tichy@ilag.gov
 & gls@ilag.gov

14

3:22-cv-03089-SEM-KLM    # 11    Filed: 06/13/22    Page 17 of 17

15