**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| ILLINOIS FUEL & RETAIL ASSOCIATION, et al., | |
| Plaintiffs, | No. 3:22-cv-03089-SEM-KLM |
| v. | Judge Sue E. Myerscough |
| ILLINOIS DEPARTMENT OF REVENUE, et al., | Magistrate Judge Karen L. McNaught |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 1

LEGAL STANDARD....................................................................................................... 3

ARGUMENT .................................................................................................................... 3

I.      There Is No Likelihood Plaintiffs Will Succeed On The Merits. ....................... 4

        A.      Plaintiffs are not entitled to relief on their free speech claim. ................ 4

                1.      The signage requirement is constitutional under *Zauderer*. ....................... 4

                2.      Plaintiffs' counterarguments lack merit................................................... 10

        B.      Plaintiffs are not entitled to relief on their equal protection claim. ..................... 12

II.     Plaintiffs Are Not Otherwise Entitled To Injunctive Relief. ............................... 14

CONCLUSION.................................................................................................................. 15

## INTRODUCTION

Confronted with rising, decades-high prices for gas and other consumer goods, the General Assembly in April took a range of measures to ease the burden of inflation on Illinois consumers. Among them was a six-month suspension of a scheduled increase in the state motor fuel tax, which would otherwise have taken effect on July 1. *See* Pub. Act No. 102-700, § 45-5 (2022) (codified at 35 ILCS 505/2). Concerned, however, that consumers might not realize the full extent of the price relief, the General Assembly also required those retailers to post a small sign on each gas pump informing consumers that the State had "suspended the inflation adjustment to the motor fuel tax through December 31," and that "[t]he price on this pump should reflect the suspension of the tax increase." *Id.*

Plaintiffs oppose the signage requirement and ask the Court to enjoin its enforcement. Doc. 7 ("Mot."); *see also* Doc. 1-1 ("Compl."). That request should be denied, because plaintiffs are in no way entitled to the "extraordinary remedy," *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008), of a preliminary injunction. Most importantly, plaintiffs fall far short of showing that the signage requirement violates their First or Fourteenth Amendment rights. The signage requirement is no more than a standard consumer-disclosure rule of the kind common in regulated industries like plaintiffs'. It does not compel political speech and it is not impermissibly discriminatory. And even if there were any prospect plaintiffs might prevail on their claims—and there is not—they would nonetheless not be entitled to equitable relief. The motion should be denied.

## BACKGROUND

The Illinois Motor Fuel Tax Law, 35 ILCS 505/1 *et seq.*, imposes a tax "on the privilege of operating motor vehicles upon the public highways . . . of this State," *id.* 505/2. The law was enacted in 1929 and the tax itself has over time been increased to track increases in the price of

gas and other goods.  *E.g.*, Pub. Act No. 86-16, § 1 (1989) (raising gas tax from 13 to 19 cents per gallon).  In 2019, the General Assembly amended the Act to provide for automatic increases in the tax rate each July, to track the rate of inflation.  Pub. Act No. 101-32, § 15-30 (2019).  As of July 2021, the state gas tax was 39.2 cents per gallon.  *See* 35 ILCS 505/2(a).

The United States is currently experiencing the highest rate of inflation in over forty years. *See* Smialek, *Inflation Hits Fastest Pace Since 1981, at 8.5% Through March*, N.Y. Times, Apr. 12, 2022.[1]  Gas prices in Illinois have risen sharply over the past year, from $3.35 per gallon one year ago to $5.56 per gallon today.  *See* AAA, *Gas Prices: Illinois* (last updated June 13, 2022).[2]

In April, the General Assembly took a range of measures meant to ease the financial burden that these rising prices placed on consumers.  As relevant here, to help stem increasing gas prices, the General Assembly suspended the automatic inflation adjustment to the gas tax that would have taken effect on July 1.  *See* Pub. Act No. 102-700, § 45-5 (2022) (codified at 35 ILCS 505/2).

To ensure, however, that consumers would actually experience the price relief, the General Assembly also required gas retailers to post a small sign on each gas pump informing consumers that the State had "suspended the inflation adjustment to the motor fuel tax through December 31," and that "[t]he price on this pump should reflect the suspension of the tax increase."  *Id.*  The Assembly borrowed the language near-verbatim from a similar requirement imposed in 2000, under then-Governor George Ryan, which required retailers to post a sign informing consumers that the State had suspended the fuel tax and that "[t]he price on this pump should reflect the

---

[1]    https://www.nytimes.com/2022/04/12/business/economy/inflation-report-march.html. The Court may "judicially notice public records," including "those available from reliable sources on the Internet."  *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006).

[2] https://gasprices.aaa.com/?state=IL.

elimination of the tax." 2000 Ill. Laws at 1657. The signage requirement takes effect on July 1

and requires retailers to post the sign or pay $500/day in fines. 35 ILCS 505/2(a-5).

Plaintiffs—two individual gas retailers and a trade association representing retailers across

the State—oppose the signage requirement and filed this suit to enjoin its enforcement. Compl.

¶ 1. They argue that the signage requirement violates their First and Fourteenth Amendment rights

by compelling them to speak and by treating them differently than other businesses. *Id.* ¶ 40.

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff "'must establish that he is likely to succeed

on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Ill.*

*Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Winter*, 555 U.S. at 24).

To obtain preliminary relief, a plaintiff must "make a strong showing that [it] is likely to succeed

on the merits"; "a mere possibility of success is not enough." *Id.* If a plaintiff satisfies each factor

individually, "the court proceeds to a balancing analysis, where the court must weigh the harm the

denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if

the court were to grant it," keeping in mind that the less "likely the plaintiff is to win on the merits,"

the more "the balance of harms needs to weigh in his favor." *Mays v. Dart*, 974 F.3d 810, 818

(7th Cir. 2020).

## ARGUMENT

Plaintiffs cannot satisfy the standard for "extraordinary" relief, *Winter*, 555 U.S. at 24, for

multiple reasons. Most importantly, plaintiffs have not come close to "mak[ing] a strong showing"

that they will prevail on the merits. *Ill. Republican Party*, 973 F.3d at 762. Plaintiffs' free-speech

claim fails because the signage requirement is a commercial disclosure rule that is subject to, and

easily satisfies, the deferential standard set out in *Zauderer v. Office of Disciplinary Counsel*, 471

U.S. 626 (1985). Their equal-protection claim is even less viable, given that plaintiffs identify no

basis for application of heightened scrutiny. And even if plaintiffs could show *some* likelihood of

success, they still would not be entitled to equitable relief.

## I.      There Is No Likelihood Plaintiffs Will Succeed On The Merits.

Plaintiffs assert two claims: a free speech claim and an equal protection claim. Both lack

merit, as the State has separately explained, Doc. 11 ("MTD"), and so there is no likelihood that

plaintiffs will prevail on either. Plaintiffs make essentially no effort to explain why this is not so,

arguing only in a single cursory paragraph that each of their claims is meritorious. Mot. 2-3. That

falls far short of their obligation to make a "strong showing" of success, *Ill. Republican Party*, 973

F.3d at 762, and the Court can deny their request for injunctive relief on that basis alone.[3]

### A.      Plaintiffs are not entitled to relief on their free speech claim.

Plaintiffs' free speech claim fails on the merits because the signage requirement is no more

than a standard commercial disclosure rule of the kind common in regulated industries. Plaintiffs'

arguments to the contrary lack merit.

#### 1.      *The signage requirement is constitutional under* Zauderer.

The signage requirement is a commercial disclosure rule that is subject to—and satisfies—

the framework the U.S. Supreme Court established in *Zauderer v. Office of Disciplinary Counsel*

*of the Supreme Court of Ohio*, 471 U.S. 626. In *Zauderer* and its progeny, the Supreme Court has

---

[3] Plaintiffs also invoke the Illinois Constitution in their complaint. Compl. ¶¶ 1, 17-19, 40. But they do not identify any Illinois caselaw that would separately entitle them to relief on state-law grounds, and so are not entitled to an injunction on that basis. In any event, Illinois courts apply federal authority on First Amendment questions, *Vuagniaux v. Dep't of Pro. Regul.*, 208 Ill. 2d 173, 190 (2003); *Desnick v. Dep't of Pro. Regul.*, 171 Ill. 2d 510, 517 (1996), and so plaintiffs' state-law free-speech claim falls with their federal free-speech claim.

held that compelled disclosures of "purely factual and uncontroversial information about the terms under which [a company's] services will be available" should be evaluated less stringently than laws that compel the disclosure of non-commercial speech. *Id.* at 651; *see Nat'l Inst. Of Family and Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361, 2372 (2018); *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 651 (7th Cir. 2006). Under that deferential level of scrutiny, compelled commercial disclosures will be upheld unless they are unjustified or impose an undue burden on speech. *NIFLA*, 138 S. Ct. at 2372, 2378; *Zauderer*, 471 U.S. at 651. *Zauderer* reflects that commercial entities, like plaintiffs, have only a "minimal" interest in "*not* providing any particular factual information" to consumers, given that the protections afforded to commercial speech by the First Amendment are "justified principally by the value to consumers of the information such speech provides." 471 U.S. at 651. The signage requirement here easily satisfies *Zauderer*'s deferential standard because it compels disclosure only of factual information about the price of gas, and does not otherwise burden plaintiffs' speech.

        a.     First, the signage requirement compels disclosure only of "factual" information. *Id.* The requirement directs gas retailers to inform consumers of a fact: that the General Assembly has "suspended the inflation adjustment to the motor fuel tax through December 31." 35 ILCS 505/2(a-5). It further explains to consumers a second fact: that the price charged for gas "should reflect the suspension of the tax increase." *Id.* There is no dispute that these are statements of fact, rather than opinion: The signage requirement does not require retailers to state, for instance, that they *approve* of the General Assembly's decision to suspend the inflation adjustment; it just requires them to state that it occurred and is reflected in the price of gas. *Cf., e.g.*, *United States v. United Foods, Inc.*, 533 U.S. 405, 411 (2001) (invalidating mandated subsidy funding compelled opinion about "whether a branded mushroom is better than just any mushroom").

The signage requirement also concerns only "uncontroversial" information. *Zauderer*, 471 U.S. at 651. This rule prohibits the government from forcing businesses to "t[ake] sides in a heated political controversy." *CTIA—The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 845 (9th Cir. 2019). The signage requirement does not do any such thing, primarily because it does not require gas retailers to "take sides" at all. It merely requires gas retailers to disclose information about the gas tax to gas purchasers—just as all retailers must generally disclose information about taxes to consumers, *see, e.g.*, 35 ILCS 105/3a (retailers must "state[]" the sales use tax, when collected, "as a distinct item separate and apart from the selling price" of the goods being sold), and as businesses are more broadly required to disclose other factual information to third parties, *see, e.g.*, 820 ILCS 105/9 (employers must inform employees of the state minimum wage); 420 ILCS 625/3.08(a) (restaurants must inform customers of certain information regarding allergies).

Plaintiffs appear to think that because they view the topic of "taxation" as "controversial," Mot. 4, they are entitled not to convey any information about it. That is incorrect, as many courts have held. For one, gas retailers are *already* under disclosure obligations regarding taxes: As noted above, all Illinois retailers that collect state use tax, including gas retailers, are required to "state[]" that tax to consumers "as a distinct item separate and apart from the selling price" of the good, 35 ILCS 105/3a—that is, inform consumers that the tax exists. *See also* 86 Ill. Admin. Code § 150.1305. That obligation does not violate the First Amendment by forcing retailers to espouse a "controversial" position, Mot. 4; it simply conveys to consumers information about the cost of goods.[4]

---

[4] To be sure, the Department has long taken the position that gas retailers are among those retailers that may comply with this requirement by "publicly posting an appropriate sign" telling consumers, as a *general* matter, that the cost of gas includes the state use tax (rather than separately stating the use tax at the pump). 86 Ill. Admin. Code § 150.1305(b); *id.* § 150.1310. But that does not change the fact that plaintiffs are already subject to disclosure rules regarding taxation.

More broadly, courts have roundly rejected the argument that "any purely factual statement that can be tied in some way to a controversial issue is, for that reason alone, controversial." *CTIA*, 928 F.3d at 845; *accord Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 526-27 (6th Cir. 2012). In *Discount Tobacco*, for instance, tobacco retailers argued that a federal statute requiring them to affix warning labels to tobacco products violated their First Amendment rights. *Id.* at 518. The court rejected the retailers' argument that heightened scrutiny applied just because the regulation of tobacco could be understood as "controversial" in the abstract. *Id.* at 525-26. Similarly, in *CTIA*, cell-phone retailers challenged a Berkeley ordinance requiring them to post safety warnings, arguing that it violated their First Amendment rights by compelling them to speak. 928 F.3d at 838. The court explained that "the required disclosure" could not be viewed as "controversial" simply because the broader debate over the cell-phone safety was one on which reasonable people could disagree. *Id.* at 848. That makes good sense: If a commercial disclosure requirement could be understood as "controversial" simply because it "can be tied in some way to a controversial" issue, *id.* at 845, regulated entities could obtain heightened review of any such disclosure simply by stating their disagreement with it. Some employers, for instance, might think that Illinois's decision to increase the state minimum wage is a "controversial" subject. *See, e.g.*, Dan Petrella, *Gov. J.B. Pritzker Signs Law Raising Illinois' Minimum Wage to $15 An Hour By 2025*, Chi. Tribune (Feb. 19, 2019) (describing business owners' objections to that law).[5] But that would not entitle them to opt out of the requirement that they post signs informing their employees of that wage, or to obtain heightened scrutiny in a First Amendment challenge to it.

---

[5] https://www.chicagotribune.com/politics/ct-met-illinois-minimum-wage-pritzker-signs-bill-20190219-story.html.

b.    Because the signage requirement compels retailers to disclose only information that is "factual" and "uncontroversial," *Zauderer* applies.  471 U.S. at 651.  *Zauderer*'s standard is a "deferential" one.  *NIFLA*, 138 S. Ct. at 2372.  "Under *Zauderer*, compelled disclosure of speech" that is factual and controversial "complies with the First Amendment if the information in the disclosure is reasonably related to a substantial governmental interest" and the disclosure does not impose an undue burden on speech.  *CTIA*, 928 F.3d at 845, 848; *see NIFLA*, 138 S. Ct. at 2372. *Zauderer* has been described a "rational-basis standard."  *Discount Tobacco*, 674 U.S. at 554; *see also N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) (same rule). Regardless, the signage requirement easily satisfies *Zauderer*.

First, the requirement is "reasonably related to a substantial governmental interest," *CTIA*, 928 F.3d at 845—namely, ensuring that consumers actually are aware of and obtain the benefit of the General Assembly's suspension of the inflation adjustment to the gas tax.  Making consumers aware of facts about a product self-evidently "qualifies as an adequate interest" under *Zauderer*. *See Am. Meat Inst. v. USDA*, 760 F.3d 18, 26 (D.C. Cir. 2014) (en banc).  Indeed, courts applying *Zauderer* routinely uphold commercial disclosure rules related to pricing.  *See, e.g.*, *Am. Hosp. Ass'n v. Azar*, 983 F.3d 528, 540 (D.C. Cir. 2020) (rule requiring hospitals to disclose rates negotiated with insurers to consumers "squarely" controlled by *Zauderer*); *Spirit Airlines, Inc. v. DOT*, 687 F.3d 403, 414 (D.C. Cir. 2012) (sustaining under *Zauderer* a rule requiring airlines to prominently display final prices on their website).  Here, the General Assembly wanted to ensure that Illinois residents obtained the full benefit of the suspension of the inflation adjustment to the gas tax.  There can be no genuine dispute that that interest is a "substantial" one, and the signage requirement is "reasonably related" to it, in multiple respects.  Most obviously, the requirement ensures that consumers know that gas taxes are lower than they might otherwise be, inducing them

to purchase more gas and stimulating the economy. *See* Lawrence Levin et al., *High Frequency Evidence on the Demand for Gasoline*, 9 Am. Econ. J. 314 (2017) (finding that reductions in the price of gas lead to increased demand for gas).[6] The requirement also serves the related purpose of increasing the pressure on retailers to actually pass on the tax relief to consumers, rather than increasing prices on July 1 to reflect a tax increase that did not occur. *See* Transp. Investment Advocacy Ctr., *How State Motor Fuel Tax Increases Affect the Retail Price of Gasoline* 2 (2020) (on average, only "one-third" of a change in state gas tax rates "is passed through to consumers").[7] Indeed, the signage requirement is particularly logical given that gas retailers, unlike most retailers, are not required to separately identify use taxes at the pump but may instead post a sign elsewhere in the station informing consumers generally that those taxes exist. *Supra* p. 6 & n.4. The signage requirement is therefore a reasonable way to inform consumers at the pump what the taxes *are*— a goal and method that easily pass muster under *Zauderer*'s deferential standard.

No other aspect of *Zauderer* calls the signage requirement's constitutionality into question. Plaintiffs advance no argument that the signage requirement is "unduly burdensome" insofar as it "chill[s] protected commercial speech." 471 U.S. at 651. Any such claim would fail, in any event: Unlike those disclosure requirements struck down on this basis in other cases, *see, e.g.*, *NIFLA*, 138 S. Ct. at 2378 (notice would "drown[] out" a regulated entity's "own message"); *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) (en banc) (similar), the signs mandated by the requirement are small, easy to post, and leave ample room for plaintiffs to

---

[6] https://www.aeaweb.org/articles?id=10.1257/pol.20140093; *see also* Lutz Kilian & Xiaoqing Zhou, Fed. Reserve Bank of Dallas, *Gasoline Demand More Responsive to Price Changes than Economists Once Thought* (June 16, 2020), https://www.dallasfed.org/research/economics/2020/0616.

[7] https://transportationinvestment.org/wp-content/uploads/2021/12/TIAC_June2020_Report_v2.pdf.

convey any message they choose—including, if necessary, any statement of support, opposition, or neutrality with respect to the gas taxation regime. *Cf. Spirit Airlines*, 687 F.3d at 414 ("Nothing . . . prohibits the [plaintiffs] from separately alerting the public to the taxes imposed on air transportation."). The signage requirement thus does not violate their First Amendment rights.[8]

2.     *Plaintiffs' counterarguments lack merit.*

Plaintiffs do not explain why *Zauderer* does not apply, or even cite it. Instead, they rely on a single First Amendment case, *Wooley v. Maynard*, 430 U.S. 705 (1977). But *Wooley* does not apply here. *Wooley* concerned a state law requiring all "noncommercial vehicles" to display the words "Live Free or Die" on their license plates. *Id.* at 707. The Supreme Court held that the law violated the First Amendment by "requir[ing] an individual to participate in the dissemination of an ideological message." *Id.* at 713. But *Wooley* did not involve commercial speech, and so it has no bearing here. Indeed, the Supreme Court made just that point in *Zauderer*, distinguishing *Wooley* and similar cases on the ground that "the interests at stake" when the government requires commercial entities to disclose facts to consumers "are not of the same order as those discussed in *Wooley*." *Zauderer*, 471 U.S. at 651. The same is true here: Requiring gas retailers to inform consumers of a change in the gas tax "is simply not the same as . . . forcing a Jehovah's Witness to display the motto 'Live Free or Die,' and it trivializes the freedom protected in . . . *Wooley* to suggest that it is." *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006).

---

[8] Plaintiffs do not invoke the Seventh Circuit's opinion in *Entertainment Software Ass'n v. Blagojevich*, 469 F.3d 641, presumably because it does not aid them: That opinion struck down an Illinois law requiring software retailers to affix labels and signage to computer games that met the statute's definition of the term "sexually explicit," *id.* at 651-52. But the key in *Entertainment Software* was that the statute required retailers to convey "a subjective and highly controversial message." *Id.* at 652. There is no similar "subjective" determination here. *See Discount Tobacco*, 674 F.3d at 526-27 (distinguishing *Entertainment Software* on this basis).

10

Plaintiffs have no effective response. Plaintiffs' argument appears to be that the signage disclosure compels *political* speech because incumbent elected officials have campaigned on the suspension of the inflation adjustment. *See* Compl. ¶¶ 21-22. But plaintiffs' theory rests not on the text of the signage requirement itself—which, as discussed, conveys only facts about the gas tax, *supra* p. 5—but on an ancillary statement made by a single state legislator and an ad run by Governor Pritzker.[9] Plaintiffs, however, must show that the *signage requirement* violates their First Amendment rights, not that statements made by others in committee meetings or on television do so. *Cf. Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 621 (1991) (Scalia, J. concurring) ("We are a Government of laws, not of committee reports."). The actual text of the signage requirement conveys no political message, regardless of what use others make of it.

Plaintiffs make no other argument warranting application of strict scrutiny here. Indeed, even if *Zauderer* did not apply, the intermediate-scrutiny standard established in *Central Hudson Gas & Elecric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), not strict scrutiny, would apply. *Central Hudson*, not strict scrutiny, governs laws regulating commercial speech, like the signage requirement, unless *Zauderer*'s more deferential test applies. *See Pearson v. Edgar*, 153 F.3d 397, 401 (7th Cir. 1998). The signage requirement satisfies *Central Hudson*, too, in that it "directly advances" the State's "substantial" interest in ensuring consumers receive the benefit of the suspension of the inflation adjustment and is not "more extensive" than necessary

---

[9]  To the extent plaintiffs' theory is that the signage requirement advances the interests of *Democratic* incumbent elected officials in particular, any such suggestion is belied by the facts. The bill suspending the inflation adjustment and imposing the signage requirement passed in the House unanimously, and only one member voted against it in the Senate. *See* Ill. Gen. Assembly, *Voting History For SB0157* (last visited June 13, 2022), https://www.ilga.gov/legislation/votehistory.asp?GA=102&DocNum=157&DocTypeID=SB&G AId=16&LegID=129172&SessionID=110. And the text of the signage requirement was borrowed nearly verbatim from a requirement imposed 20 years ago under a Republican administration. *See supra* pp. 2-3.

to serve that interest. *Id.*; *see supra* pp. 8-9. But plaintiffs have not invoked *Central Hudson*, and so have forfeited any argument that the signage requirement should be struck down under its standard. *See Sansone v. Brennan*, 917 F.3d 975, 983 (7th Cir. 2019).

  **B.**  **Plaintiffs are not entitled to relief on their equal protection claim.**

  There is also no likelihood that plaintiffs will succeed on their equal protection claim. Such a claim merits heightened scrutiny "only if the state-crafted classification disadvantages a suspect class or 'impermissibly interferes' with a fundamental right"; "[o]therwise, rational-basis review governs." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 & n.3 (7th Cir. 2019). Here, plaintiffs identify no suspect or quasi-suspect class—race, gender, or the like—to which they belong and against whom the signage requirement discriminates. Instead, Plaintiffs' only argument is that the law enacted by the General Assembly in April improperly treats fuel retailers worse than other businesses—specifically, than grocery store owners, which must likewise post a sign informing consumers of a tax cut but which do not face penalties if they do not. Mot. 6; *see* Compl. ¶¶ 23-28; 35 ILCS 105/3a. But gas retailers are not a protected class, and courts do not apply heightened scrutiny to laws that distinguish merely between two different kinds of businesses. So rational-basis review applies.

  Plaintiffs cannot show that the signage requirement flunks rational-basis review. Under that standard, a court may strike down a state law "only if there is no rational relationship between the classification [made by the law] and 'some legitimate government purpose.'" *St. Joan Antida*, 919 F.3d at 1010. The standard is highly deferential to legislative judgments: "[A] classification is generally valid as long as a rational basis is plausible, even if the legislature did not expressly endorse it." *Id.* Indeed, the rational-basis standard "imputes 'a strong presumption of validity' on

the contested classification"; to overcome it, "a challenger must negate 'every conceivable basis which might support' the classification." *Id.*

Plaintiffs fail to meet that demanding burden. Plaintiffs' argument is that the distinction drawn by the General Assembly between gas retailers and grocery-store owners is "unjustified." Mot. 6. But it is plaintiffs' burden, on rational-basis review, to "negate" any "conceivable" basis the General Assembly might have had for drawing that distinction. *St. Joan Antida*, 919 F.3d at 1010. Here, there are many "plausible" reasons, *id.*, the General Assembly might have imposed a penalty on gas retailers that failed to post signs informing consumers of tax relief but not imposed a similar penalty on grocers. For instance, the legislature might have understood that gas retailers, unlike grocers, do not generally separately identify use taxes at the point of sale, *supra* p. 6 & n.4, and so absent the signage requirement, consumers might not know that the tax rate had not increased. Alternatively, the legislature might have wanted to provide a greater incentive to gas retailers to post signs because the increase in gas prices has been particularly problematic for consumers, and thus tax relief more important. *E.g.*, Clifford Krauss & Marie Solis, N.Y. Times, *U.S. Gas Prices Hit a New High: $5 a Gallon* (June 11, 2022).[10] Or perhaps the legislature might have thought it was more likely that gas retailers might not pass a reduction in the gas tax on to consumers, and so thought the signs more important in that context. Transp. Investment Advocacy Ctr., *State Motor Fuel Tax Increases*, *supra*, at 2. Finally, the legislature might have believed that it was easier for gas retailers to post the signs, given the highly regulated nature of their business, and so thought that any failure to do so would be more problematic and thus more deserving of penalties.

---

[10]                    https://www.nytimes.com/2022/06/11/business/energy-environment/gasoline-price.html.

These rationales for distinguishing between gas retailers and grocers are "conceivable," *St.*

*Joan Antida*, 919 F.3d at 1010, and all are permissible under rational-basis review. *Cf. Williamson*

*v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 488 (1955) (courts do not "strike down state laws"

simply because "they may be unwise, improvident, or out of harmony with a particular school of

thought"). Plaintiffs thus cannot prevail on their equal protection claim.

## II.    Plaintiffs Are Not Otherwise Entitled To Injunctive Relief.

Even if plaintiffs could show *some* likelihood of success, they still would not be entitled to

equitable relief. Although defendants agree that "[t]he loss of First Amendment freedoms" may

give rise to irreparable harm, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), the fact that a plaintiff has

shown the possibility of irreparable harm does not entitle it to injunctive relief. Rather, a court

must consider "the irreparable harm the non-moving party will suffer if preliminary relief is

granted, balancing that harm against the irreparable harm to the moving party if relief is denied,"

and "the public interest, meaning the consequences of granting or denying the injunction to non-

parties." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021). "This balancing process involves

a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance

of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818. Here, that balancing

inquiry tips against issuance of injunctive relief, for several reasons.

First, even if plaintiffs could show some likelihood of success on the merits as to their First

Amendment claim, their First Amendment interest in *not* conveying basic facts about the gas tax

to consumers is minimal. As the Supreme Court explained in *Zauderer*, "the extension of First

Amendment protection to commercial speech is justified principally by the value to consumers of

the information such speech provides," making a commercial entity's "constitutionally protected

interest in *not* providing any particular factual information . . . minimal." 471 U.S. at 626; *accord*

14

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250 (2010). Whatever harm plaintiffs might incur by the denial of an injunction while this case proceeds is thus "minimal" at best.

Second, and by contrast, the State's interests here are significant. As the Supreme Court has explained, "the inability to enforce its duly enacted [statutes] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018); *accord, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined . . . from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). That irreparable harm is particularly significant here. As discussed, *supra* p. 2, Illinois consumers are facing decades-high prices for gas and other consumer goods, a problem the General Assembly attempted to remedy by suspending the increase in the gas tax and requiring gas retailers to inform consumers of the suspension. If the signage requirement is enjoined pending a trial on the merits, the tax relief the General Assembly attempted to secure for Illinois consumers will not be fully realized. That result would be particularly problematic given that the suspension of the inflation adjustment to the gas tax is temporary, and so any preliminary injunction entered at this stage might, in practice, become a permanent one.

In sum, plaintiffs cannot "make a strong showing" that they will prevail on the merits, *Ill. Republican Party*, 973 F.3d at 762, nor can they show that the "balance of harms" weighs in their favor, *Mays*, 974 F.3d at 818. The Court should deny the motion for a preliminary injunction and allow the signage requirement to take effect.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for a preliminary injunction.

Dated: June 13, 2022                          Respectfully submitted,

                                              KWAME RAOUL
                                              Illinois Attorney General

                                        By:   /s/ Alex Hemmer_____
David Tichy                                   Alex Hemmer
Assistant Attorney General                    Deputy Solicitor General
Office of the Illinois Attorney General       Office of the Illinois Attorney General
500 South Second Street                       100 W. Randolph Street
Springfield, Illinois 62701                   Chicago, Illinois 60601
(217) 782-1841                                (312) 814-5526
david.tichy@ilag.gov                          alex.hemmer@ilag.gov

16