IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ILLINOIS FUEL & RETAIL ASSOCIATION, SAUNDERS OIL CO., INC., and FREEDOM OIL COMPANY, on their own behalf and on behalf of a class of retailers similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF REVENUE and DAVID HARRIS, in his official capacity as Director of the Illinois Department of Revenue, and DAN WRIGHT, in his official capacity and as representative for all Illinois State's Attorneys,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 22-3089<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is a Motion to Dismiss (d/e 10) filed by Defendants, the Illinois Department of Revenue ("IDR" or "the Department") and its director, David Harris, along with Sangamon County State's Attorney Dan Wright ("Defendants"). Plaintiffs, the Illinois Fuel & Retail Association, Sauders Oil Company, Inc., and Freedom Oil Company ("Plaintiffs"), have filed suit challenging the

validity, under the U.S. Constitution and the Illinois Constitution of 1970, of Section 45-5 of Illinois Senate Bill 157 ("SB 157"). Ill. Legis. Serv. P.A. 102-700, § 45-5, codified at 35 ILCS § 505/2(a-5). Because Plaintiffs' Complaint (d/e 1-1) fails to state a claim on which relief can be granted, Defendants' Motion (d/e 10) is GRANTED.

## I. BACKGROUND

The following facts are taken from Plaintiffs' Complaint (d/e 1-1) and are accepted as true for purposes of Defendants' Motion to Dismiss. Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 639 (7th Cir. 2015).

Plaintiff Illinois Fuel & Retail Association is a trade association serving a large number of petroleum distributors and retailers in Illinois, among them Plaintiffs Saunders Oil Company, Inc., and Freedom Oil Company. Compl. (d/e 1-1) ¶¶ 4–5. Defendants are Illinois agencies and officials who are charged by statute with, among other things, enforcing the provisions of the Illinois Motor Fuel Tax Law, 35 ILCS § 505/1 et seq. (the "Motor Fuel Tax"). Id. ¶¶ 2, 8–10.

The Motor Fuel Tax imposes taxes on the operating of motor vehicles on public highways and recreational-type watercraft upon the waters of the State of Illinois.  Id. ¶ 12.  The Motor Fuel Tax was recently amended by SB 157 to provide,

> Beginning on July 1, 2022 and through December 31, 2022, each retailer of motor fuel shall cause the following notice to be posted in a prominently visible place on each retail dispensing device that is used to dispense motor fuel in the State of Illinois: "As of July 1, 2022, the State of Illinois has suspended the inflation adjustment to the motor fuel tax through December 31, 2022. The price on this pump should reflect the suspension of the tax increase." The notice shall be printed in bold print on a sign that is no smaller than 4 inches by 8 inches. The sign shall be clearly visible to customers. Any retailer who fails to post or maintain a required sign through December 31, 2022 is guilty of a petty offense for which the fine shall be $500 per day per each retail premises where a violation occurs.

35 ILCS 505/2(a-5); Compl. ¶14.  As part of the Illinois Department of Revenue's duty to administer and enforce the Motor Fuel Tax, the Department has disseminated notices to motor fuel retailers informing them of SB 157's amendments and providing them with copies of the required signage.  Compl. ¶8, Exs. C & D.

Senate Bill 157 also amended Illinois' Use Tax Act ("Use Tax") to provide,

> In addition, retailers who sell items that would have been taxed at the 1% rate but for the 0% rate imposed under this amendatory Act of the 102nd General Assembly shall, to the extent feasible, include the following statement on any cash register tape, receipt, invoice, or sales ticket issued to customers: "From July 1, 2022 through July 1, 2023, the State of Illinois sales tax on groceries is 0%.". If it is not feasible for the retailer to include the statement on any cash register tape, receipt, invoice, or sales ticket issued to customers, then the retailer shall post the statement on a sign that is clearly visible to customers. The sign shall be no smaller than 4 inches by 8 inches.

35 ILCS 105/3a; Compl. ¶15.  The amendment to the Use Tax does not contain criminal penalties if retailers fail to comply.  Id.

Plaintiffs filed suit in the Circuit Court of the Seventh Judicial Circuit in Sangamon County, Illinois on May 9, 2022.  See Compl.  Plaintiffs allege SB 157's amendments to the Motor Fuel Tax and the Use Tax violate Plaintiffs' free speech rights under the U.S. Constitution and Illinois Constitution, Plaintiffs' rights to equal protection under the U.S. Constitution, and 42 U.S.C. § 1983.  Id. ¶1, 3, 17.  Defendants then removed the suit to this Court on June 2, 2022 pursuant to 28 U.S.C. § 1441 and filed the present Motion

to Dismiss (d/e 10) and Memorandum in Support (d/e 11) on June 13, 2022.

## II.   JURISDICTION AND VENUE

The Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims of violations of First and Fourteenth Amendment rights and 42 U.S.C. § 1983. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' claims of violations of the Illinois state constitution. Venue is proper in this district under 28 U.S.C. § 1391.

## III.   LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana, 768 F.3d 510, 526 (7th Cir. 2015)). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading need not contain "detailed factual allegations" to pass a Rule 12(b)(6) challenge but still must "state a

claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). Moreover, while all factual allegations are accepted as true on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)). Accordingly, a complaint will be dismissed if it is legally insufficient to the extent that no set of facts could support the claims raised.

### IV. ANALYSIS

Plaintiffs request in their Complaint that the Court enter a declaratory judgment stating that SB 157's amendment to the Motor Fuel Tax requiring Plaintiffs display certain signage is (1) compelled speech in violation of Plaintiffs' rights under the First Amendment of the U.S. Constitution; (2) a violation of Plaintiffs' right to equal protection under the Fourteenth Amendment of the U.S. Constitution; and (3) compelled speech in violation of Article I, Section 4 of the Illinois Constitution of 1970. Compl. ¶40.

Defendants request the Court dismiss each claim because, in their view, each claim is legally insufficient on its face.

### a. Under <u>Zauderer</u>, the mandated signage does not violate Plaintiffs' First Amendment rights.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." <u>Nat'l Inst. of Family & Life Advocates v. Becerra</u>, 138 S.Ct. 2361, 2371 (2018) ("<u>NIFLA</u>"). The First Amendment protects individuals from both unlawful restrictions on speech as well as from being unlawfully compelled to speak. <u>United States v. United Foods, Inc.</u>, 533 U.S. 405, 410 (2001) ("Just as the First Amendment may prevent the government from prohibiting speech, the Amendment may prevent the government from compelling individuals to express certain views.") The parties agree that SB 157 involves governmentally compelled speech. However, the parties disagree as to whether the compelled speech SB 157 mandates is political or commercial.

Defendants argue that the mandatory signage is commercial speech and should be analyzed under the Supreme Court's decision in <u>Zauderer v. Office of Disciplinary Counsel of the Supreme Court</u>

of Ohio, 471 U.S. 626 (1985). In Zauderer, the Supreme Court considered whether the First Amendment prevented the State of Ohio from requiring an attorney to disclose the percentages associated with his contingency-fee agreement in his advertisements. 471 U.S. at 633. The Court first found that "the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides" and the advertiser's "constitutionally protected interest in not providing any particular factual information in his advertising is minimal." Id. (citing Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748 (1976)) (emphasis in original). The Court then held that mandated disclosures which include "purely factual and uncontroversial information about the terms under which . . . services will be available" do not offend the First Amendment so long as the disclosures "are reasonably related to the State's interest in preventing deception of customers." Id. at 651; NIFLA, 138 S.Ct. at 2372. The Court later clarified that while this 'reasonably related' test is "deferential," the disclosure requirements cannot be "unjustified or unduly burdensome" and must be

designed to "remedy a harm that is 'potentially real [and] not purely hypothetical." NIFLA, 138 S.Ct. at 2376–77 (quoting Zauderer, 471 U.S. at 651, and Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy, 512 U.S. 136, 146 (1994)).  The State bears the burden to show that the required disclosure satisfies the Zauderer test.  Id. at 2377 (citing Ibanez, 512 U.S. at 146).

In response to Defendants' arguments, Plaintiffs argue that Zauderer is inapplicable because SB 157's mandatory signage constitutes political speech and is, therefore, subject to strict scrutiny.  But the mandated signage states, "As of July 1, 2022, the State of Illinois has suspended the inflation adjustment to the motor fuel tax through December 31, 2022.  The price on this pump should reflect the suspension of the tax increase." 35 ILCS 505/2(a-5).  That is a purely factual statement about what the Illinois General Assembly did, and the signage does not contain controversial statements.  Plaintiffs cite no case law or authority, binding or otherwise, to support their contention that the signage is political.  Plaintiffs cite only their Complaint at paragraphs 16–17, 20, 22, and 30 along with statements by incumbent Illinois elected officials about SB 157's mandated signage for the proposition that

the signage is political speech. But such assertions are "legal conclusion[s] couched as a factual allegation[s]" which the Court is not bound to accept as true. Papasan, 478 U.S. at 286. Moreover, incumbent officials' statements about the mandatory signage do not change the substance of the signage such that the factual information within the signage is converted to political speech. See Jordan v. Jewel Food Stores, Inc., 743 F.3d 509, 516–17 (7th Cir. 2014) ("Indeed, the Supreme Court has made clear that advertising which links a product to a current public debate is not thereby entitled to the constitutional protection afforded noncommercial speech.") (internal quotation and additional citation omitted); see also CTIA–The Wireless Ass'n v. City of Berkely, Cal., 928 F.3d 832, 847 (9th Cir. 2019) ("We do not read the Court as saying broadly that any purely factual statement that can be tied in some way to a controversial issue is, for that reason alone, controversial.") Accordingly, the Court agrees with Defendants that Zauderer provides the proper analysis here.

Applying Zauderer, SB 157's signage mandate survives Plaintiffs' facial challenge. As stated, the signage contains "purely factual and uncontroversial information" about what taxes are

assessed on the price of gasoline. That information furthers the Defendants' stated goal of "ensuring that customers actually are aware of and obtain the benefit of the General Assembly's suspension of the inflation adjustment to the gas tax." Def.'s Mem. (d/e 11) pp. 5–6. Additionally, the harm the signage seeks to prevent or remedy is "potentially real [and] not purely hypothetical." NIFLA, 138 S.Ct. at 2377. Without SB 157's amendments, the inflation adjustment to the Motor Fuel Tax would indisputably occur. With the amendment, the inflation adjustment will not occur at least through December 31, 2022. The State's stated goal is to inform Illinois consumers of this fact in the hopes that the retailers would pass the reduced tax on to consumers. The signage is reasonably related to preventing gas retailers from deceiving consumers by increasing gas prices by the non-imposed but previously scheduled inflation adjustment. The alleged harm the signage seeks to remedy is hardly hypothetical, especially given the recent steady climb of gas prices. See U.S. Bureau of Labor Statistics, Consumer Price Index Summary, available at https://www.bls.gov/news. release/ cpi.nr0.htm (noting an average

48.7% unadjusted increase in the price of gasoline in the 12 months ending May 2022).

Lastly, the mandated signage is hardly burdensome. The Department of Revenue has already supplied Plaintiffs with printable, SB 157-compliant signs to post on the gas pumps. See Compl. (d/e 1-1) Ex. C. All Plaintiffs need to do is print the signs and affix them to the gas pumps, an undemanding task. In sum, the mandated signage equips consumers with the basic knowledge of both the goods the consumers are purchasing and the taxes they are paying. The signage mandated by SB 157 meets Zauderer's "reasonable relationship standard." Accordingly, the Court finds that Plaintiffs cannot allege any set of facts that would be legally sufficient to facially challenge SB 157. Plaintiffs' claim under the First Amendment is, therefore, dismissed.

b. **The mandated signage does not violate the Fourteenth Amendment's Equal Protection Clause.**

The Equal Protection Clause of the Fourteenth Amendment states "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The Equal Protection Clause is "essentially a direction that all persons

similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  When considering the validity of a challenged state law which treats individuals differently, the general rule, commonly referred to as rational basis review, "is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest." Id.  "An equal-protection claim merits strict scrutiny, [the Court's] most exacting inquiry, only if the state-crafted classification disadvantages a suspect class or 'impermissibly interferes' with a fundamental right." St. Joan Antida High Sch. v. Milwaukee Pub. Sch. Dist., 919 F.3d 1003, 1008 (7th Cir. 2019) (quoting Segovia v. United States, 880 F.3d 384, 390 (7th Cir. 2018)).

Here, Defendants argue that Plaintiffs' Complaint is legally insufficient because the mandated signage passes rational basis review, and SB 157 neither infringes on a fundamental right nor discriminates on a basis warranting heightened scrutiny.  Plaintiffs respond by claiming that their equal protection rights have been violated because SB 157's amendments to the Motor Fuel Tax, to which Plaintiffs are subject, includes a criminal penalty for

noncompliance while SB 157's amendments to the Use Tax, to which other retailers not including Plaintiffs are subject, does not include criminal penalties. Therefore, Plaintiffs' argue, SB 157 should be subject to strict scrutiny.

The Court agrees with Defendants. The mandated signage in SB 157 does not create a suspect classification of race, alienage, or national origin. And while Plaintiffs invoke their rights under the First Amendment, "the existence of that fundamental right . . . is not enough to trigger strict scrutiny." St. Joan Antida, 919 F.3d at 1008. Rather, "[a] direct and substantial interference is required." Id. As previously discussed, the signage passes muster under Zauderer, and so does not substantially interfere with or "impinge on personal rights protected by the Constitution." City of Cleburne, 473 U.S. at 440. Accordingly, no heightened scrutiny applies here.

Instead, the Court applies rational basis review. That review states that there need only be a "rational relationship between the classification and 'some legitimate government purpose.'" St. Joan Antida, 919 F.3d at 1010. "Under rational-basis review, a statutory classification comes to court bearing a strong presumption of validity, and the challenger must negative every conceivable basis

which might support it." <u>Minerva Dairy Inc. v. Harsdorf</u>, 905 F.3d 1047, 1053 (7th Cir. 2018) (internal quotation and additional citation omitted). To uphold a statute analyzed under such review, the Court "need only find a reasonably conceivable set of facts that could provide a rational basis for the classification." <u>Id.</u> (internal quotation and additional citation omitted). "This deferential standard of review is a notoriously heavy legal lift for the challenger." <u>Id.</u>

The signage mandated by SB 157 is rationally related to Defendants' stated conceivable interests. The signage clearly passes the <u>Zauderer</u> test which is, itself, a more exacting standard than rational basis review, though not as exacting as strict scrutiny. See <u>Amarei v. City of Chicago</u>, Case No. 13-C-2805, 2015 WL 7251940 at, *3 (N.D. Ill. Nov. 17, 2015) (acknowledging that <u>Zauderer</u> "is not a form of rational basis review" and discussing cases). More to the point, though, is the fact that "Courts have routinely held that consumer protection," the interest Defendants advance here, "is a legitimate state interest." <u>Minerva Dairy</u>, 905 F.3d at 1053. And like the butter-grading disclosures in <u>Minerva Dairy</u>, the signage here "advance[s] that interest by giving

consumers relevant product information that may influence their purchasing decisions," that information being the tax burden on the gas consumers buy.  Id. at 1053–54 (citing Am. Meat Inst. v. U.S. Dep't of Agric., 760 F.3d 18, 23–26 (D.C. Cir. 2014)).  While Defendants couch their asserted interest as what the Illinois General Assembly "might have" wanted to accomplish by enacting SB 157, "the state does not need to present actual evidence to support its proffered rationale for the law, which can be based on rational speculation unsupported by evidence or empirical data." Minerva Dairy, 905 F.3d at 1055 (cleaned up).  The signage mandated by SB 157 passes rational basis review because it is rationally related to Defendants' legitimate interest in fully informing Illinois consumers of the suspension of the inflation adjustment to the Motor Fuel tax to, hopefully, ensure gas retailers "pass on [the] reduction in the gas tax to consumers."  Def.'s Mem. (d/e 11) p. 11.  And because "a legislative choice is not subject to courtroom fact-finding," Plaintiffs' equal protection claim is dismissed.  Minerva Dairy, 905 F.3d at 1055 (internal quotations and additional citations omitted); Wroblewkski v. City of Washburn, 965 F.2d 452, 459–60 (discussing the competing standards under

rational basis review and a Rule 12(b)(6) motion to dismiss and affirming dismissal where "[t]he complaint's conclusory assertion that the policy is 'without rational basis' [was] insufficient to overcome the presumption of rationality coupled with the readily apparent justification for the policy.")

### c. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining Illinois Constitutional claim.

Article I, § 4 of the Illinois Constitution of 1970 states "All persons may speak, write and publish freely, being responsible for the abuse of that liberty. In trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense."  While the Illinois Supreme Court has held that "the Illinois Constitution may provide greater protection to free speech than does its federal counterpart," the court also stated that conclusion "does not mean that greater protection is afforded in every context." City of Chicago v. Pooh Bah Enters., Inc., 865 N.E.2d 133, 168 (Ill. 2006).  Defendants argue that the Court should not "conclude that article 1, section 4, of the Illinois Constitution affords greater protection to Plaintiffs in this context than is provided by the federal constitution" because

Plaintiffs have not identified any Illinois case law providing as much.  Def.'s Mem. (d/e 11) p. 9.  Plaintiffs' only response is Defendants' argument is "simply not true."  Pl.'s Resp. (d/e 15) p. 3.  Plaintiffs do not provide any pertinent authority to develop their arguments or claims.

"[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." United States v. Holm, 326 F.3d 872, 877 (7th Cir. 2003)); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")  Moreover, the Court has already dismissed the only claims over which the Court has original jurisdiction.  "The general rule, when the federal claims fall out before trial, is that the [district court] should relinquish jurisdiction over any supplemental . . . state law claims in order to minimize federal judicial intrusion into matters of purely state law." Burrit v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015) (quoting Carr v. CIGNA Secs., Inc., 95 F.3d 544, 546 (7th Cir.1996)).  District courts only continue to exercise supplemental jurisdiction over supplemental claims in "unusual cases." Id. (quoting Wright v. Associated Ins. Cos., Inc., 29 F.3d

1244, 1251 (7th Cir.1994)).  This is not such an unusual case, so the Court declines to extend its exercise of supplemental jurisdiction over Plaintiffs' claim under the Illinois Constitution. Therefore, Plaintiffs' claim arising under the Illinois Constitution is dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (d/e 10) is GRANTED.

**IT IS THEREFORE ORDERED:**

1) To the extent Plaintiffs' Complaint asserts a facial challenge under the First Amendment and an equal protection challenge under the Fourteenth Amendment of the U.S. Constitution, those claims are DISMISSED WITHOUT PREJUDICE.

2) The Court declines to exercise supplemental jurisdiction over Plaintiffs' challenge under the Illinois Constitution, and so that claim is DISMISSED WITHOUT PREJUDICE.

3) All pending motions are DENIED as MOOT, all pending deadlines are TERMINATED, and any scheduled settings are VACATED.

4) Plaintiffs are given leave to file an amended complaint within 14 days of the entry of this Order. If Plaintiff fails to do so, this case may be subject to dismissal with prejudice for failure to prosecute under Local Rule 7.1(B)(2).

**IT IS SO ORDERED.**
**ENTERED: June 23, 2022.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**